# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

| | |
|---|---|
| **KEVIN LEE MAYNARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 3:13-10135** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, Kevin Lee Maynard (hereinafter referred to as "Claimant"), filed an application for SSI on August 25, 2010 (protective filing date), alleging disability as of August 1, 2008, due to herniated discs in lower back, anxiety, sciatic nerve problems, and epilepsy. (Tr. at 15, 179-88, 189, 203.) The claim was denied initially and upon reconsideration. (Tr. at 110-12, 117-19.) On April 26, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 123-24.) The hearing was held on February 16, 2012, before the Honorable Brian LeCours. (Tr. at 25-84.) By decision dated March 5, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-24.) The ALJ's decision became the final decision of the Commissioner on March 1, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) On May 3, 2013, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C.

§ 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the

capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since August 25, 2010, the application date. (Tr. at 17, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease," which was a severe impairment. (Tr. at 17, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform light exertional work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the [C]laimant may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. However, the [C]laimant may never climb ladders, ropes and scaffolds. Finally, the [C]laimant must avoid concentrated exposure to extreme cold, vibrations, and all exposure to hazardous conditions such as unprotected heights and dangerous machinery.

(Tr. at 19, Finding No. 4.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 22, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as a price marker, house sitter, and package tagger, at the light level of exertion. (Tr. at 23-24, Finding No. 9.) On this basis, benefits were denied. (Tr. at 24, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict

were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on November 13, 1963, and was 47 years old at the time of the second administrative hearing, April 26, 2011. (Tr. at 22, 31, 180.) Claimant had a ninth grade, or limited education and was able to communicate in English. (Tr. at 22, 31, 68, 202, 204.). Claimant had past relevant work as a furniture mover, parts laborer, fork lift operator, and demolition laborer. (Tr. at 22, 77, 204, 210-11.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ improperly assessed Claimant's credibility. (Document No. 11 at 3-7.) Citing Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987), Claimant argues that he satisfied the requirements of 42 U.S.C. § 423(d)(5)(A), and that the evidence of record is supported by substantial evidence. (Id. at 6-7.) Claimant asserts that the ALJ failed to consider the combined effects of Claimant's exertional and nonexertional impairments, both physically and mentally, in light of the "mutually supportive test." (Id.) He further argues that the ALJ utilized boilerplate credibility language which warrants

4

remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (Id. at 7-8.) For these reasons, Claimant contends that remand is required for further consideration. (Id. at 8-9.)

In response, the Commissioner asserts that Claimant failed to establish that his depression and anxiety were severe impairments that significantly limited his ability to work. (Document No. 12 at 10-12.) The Commissioner asserts that Claimant received minimal conservative treatment for his anxiety and depression and that his symptoms improved with medication. (Id. at 10.) When he stopped taking the medication, his symptoms worsened and when he resumed the medication, his symptoms improved. (Id.) Thus, the Commissioner asserts that an impairment that can be controlled by medication cannot serve as the basis for disability. (Id.) The Commissioner further asserts that the opinions of Drs. Lateef and Smith support the RFC assessment of the ALJ. (Id. at 11.) These doctors found that Claimant's anxiety resulted in no more than mild functional limitations. (Id.) Similarly, the reports from Ms. Wilson and Ms. Arthur indicate an absence of any severe mental impairment. (Id.) The Commissioner therefore contends that the ALJ's finding of no more than mild functional mental limitations is supported by the substantial evidence of record. (Id. at 12.) To the extent that the ALJ erred however, the Commissioner asserts that such error is harmless, because he proceeded to step three of the sequential analysis and considered whether there were any functional limitations resulting from all impairments. (Id.)

The Commissioner further asserts that the ALJ properly considered the scant objective medical evidence and that his physical RFC assessment is supported by the substantial evidence of record. (Document No. 12 at 14-15.) The Commissioner notes that the treatment notes from Dr. Caraway and Dr. Werthammer and the MRI results fail to reflect that Claimant experienced any debilitating pain and symptoms. (Id. at 16.)

5

Regarding Claimant's credibility, the Commissioner asserts that the ALJ assessed it pursuant to the controlling rulings and regulations. (Tr. at 16-18.) The ALJ set forth proper hypothetical questions to the VE that set forth all the limitations supported by the record. Accordingly, the ALJ was entitled to rely on the VE's testimony. (Id. at 18-19.) The Commissioner therefore, asserts that Claimant's arguments are without merit. (Id. at 19.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

*Physical Impairments*:

Claimant underwent a lumbar operation by Dr. Lowe in 1987, after having slipped on grease and water and fell on the floor. (Tr. at 353, 358.)

On October 26, 2010, Dr. Kip Beard, M.D., examined Claimant at the request of the state agency. (Tr. at 260-65.) Claimant alleged back problems and epilepsy, with his last seizure having occurred in either 1991 or 1992. (Tr. at 260.) He indicated that he had not been taking any seizure medications. (Id.) He reported neck, middle, and lower back pain that had increased since 2008, without any radiation of pain. (Id.) He noted that the pain was constant in nature and was increased with doing dishes, vacuuming, and sweeping with the broom. (Id.) He had increased left-sided lower back pain with coughing and sneezing. (Id.) Hot baths and Advil helped alleviate the pain somewhat. (Id.) Claimant reported that he smoked two packs of cigarettes per day and drank "a lot." (Tr. at 261.)

On physical exam, Dr. Beard noted that Claimant ambulated without any assistive device, had a normal gait and mildly stiff posture, he stood unassisted, appeared comfortable when seated, and had back pain when standing. (Tr. at 262.) Dr. Beard noted that Claimant smelled of alcohol, but was not intoxicated and was cooperative. (Id.) Examination of the cervical spine revealed some mild pain with

6

tenderness and stiffness without spasm and decreased cervical spine motion. (Id.) Claimant had some moderate pain with stiffness and tenderness without spasm of the lumbar spine, with decreased flexion, but otherwise normal range of motion. (Tr. at 263.) Seated straight leg raising produced back pain at 90 degrees on the right and in supine, produced pain on either side at 75 degrees. (Id.) Claimant was able to heel walk, toe walk, tandem walk, and squat three quarters of the way with back pain. (Id.) There was no sensory loss, motor weakness, or atrophy. (Tr. at 264.) A lumbar spine x-ray revealed narrowing at the L4-L5 and L5-S1 levels. (Tr. at 265.)

  Dr. Beard assessed a history of left lumbar radiculopathy status post lumbar surgery; chronic cervical, thoracic, and lumbosacral strain with probable spondylosis and degenerative disc disease; and remote history of seizures, currently in remission apparently. (Tr. at 263-64.)

  An MRI of Claimant's lumbar spine on February 4, 2011, revealed degenerative changes most pronounced at the L4-L5 level, where they were superimposed on congenital spinal canal stenosis. (Tr. at 277-79, 341-43, 355-57.) There also was a bulging disc and possible nerve root impingement. (Id.) The radiologist interpreting the MRI recommended a neurological consultation. (Id.) On February 17, 2011, Claimant was referred to Dr. Matthew C. Werthammer, M.D., for neurological consultation. (Tr. at 353-54.) Claimant reported persistent numbness in the left leg that had persisted since his surgery in 1987, but denied any radiation of pain. (Tr. at 353.) He reported that the pain was worse with coughing and sneezing. (Id.) Dr. Werthammer noted on exam that Claimant had full cervical and lumbar range of motion without spasm or point tenderness. (Id.) He was oriented, had intact memory, was able to follow complex tasks briskly, and exhibited fluent speech. (Tr. at 353-54.) He had normal motor strength of all extremities with intact sensation. (Tr at 354.) Straight leg raise testing produced back pain bilaterally but not leg pain. (Id.) Dr. Werthammer assessed degenerative lumbar spinal disease with long-standing axial low back pain. (Id.) He recommended conservative treatment

consisting of lumbar physical therapy and possible injections. (Id.)

Claimant initiated treatment at St. Mary's Medical Center Pain Center on March 11, 2011. (Tr. at 298, 320.) Claimant reported increased severe low back pain for the past two to three years. (Tr. at 320.) He indicated that the pain was exacerbated by coughing and sneezing, moving forward or backward, bending over, or with any movement. (Id.) He reported no new injury or fall. (Id.) Claimant reported that the pain was located in the low back pain and radiated over the left hip or down the left leg with some numbness. (Id.) Dr. David L. Caraway, M.D., Ph.D., noted during a March 11, 2011, examination that Claimant took Cymbalta 30mg and Hydrocodone 5/500mg a couple times a day as needed, as well as Ibuprofen 800 three times daily. (Tr. at 358.) Claimant denied the use of alcohol. (Id.) On physical exam, Dr. Caraway observed an antalgic gait, limited forward flexion, positive straight leg raise testing, and an inability to squat fully. (Id.) Dr. Caraway recommended physical therapy and noted Dr. Werthammer's opinion that surgery would not benefit Claimant. (Id.) He further recommended epidural injections, Lyrica, and Hydrocodone three times daily for pain control. (Tr. at 359.) Claimant underwent epidural injections on April 26, 2011, July 5, 2011, and August 2, 2011. (Tr. at 329-30, 331-32, 333-34.)

On September 13, 2011, Dr. Caraway reported that Claimant had at least sixty percent benefit from the epidural injections. (Tr. at 314.) He noted that since the injections, Claimant's right leg gave out on him and he experienced some pain and was treated at MedExpress after the fall. (Id.) A urine screen on that date was positive for amphetamines. (Tr. at 315, 336.) Dr. Caraway noted that Claimant would sign a narcotics contract and that they had provided him with Lortab and Lyrica already and would continue those medications, and add Vistaril 50mg for anxiety. (Id.) On December 9, 2011, Claimant reported improvement of his radicular complaints with Lyrica but that his physician had instructed him to stop taking the medication due to redness of the face and bilateral lower extremities.

(Tr. at 307.) Dr. Caraway's Physician's Assistant examined Claimant and noted pain mannerisms with movement of his cervical and lumbar spines, an antalgic gait, positive straight leg raise bilaterally, decreased range of left lower extremity motion, and tenderness over his spinal regions. (Tr. at 308.) The P.A. substituted Oxycodone 5/325 three times daily for Lortab and restarted Lyrica as the flushing symptoms were secondary to the Vistaril. (Tr. at 308-09.) He also recommended that Claimant request an anti-depressant medication from his primary care physician. (Tr. at 309.)

On November 8, 2010, Dr. Atiya M. Lateef, M.D., completed a physical RFC assessment and concluded that Claimant was not disabled. (Tr. at 93.) Dr. Lateef opined that Claimant was capable of performing light level work, with occasional postural limitations except that he never could climb ladders, ropes, or scafffolds or balance. (Tr. at 91-92.) Dr. Lateef further opined that Claimant should avoid concentrated exposure to extreme cold and vibration and should avoid all exposure to hazards. (Tr. at 92.)

*Mental Impairments*:

On September 30, 2010, Emily Wilson, M.A., a licensed psychologist, conducted a mental status examination at the request of the state agency. (Tr. at 256-59.) Claimant reported that he was applying for benefits due to back pain and nerves. (Tr. at 256.) Claimant reported symptoms of anxiety that began in 1985, including worry about his health and job stress, difficulty controlling his worry, being easily fatigued, and sleep disturbance accompanied by bad dreams. (Tr. at 257.) He also reported symptoms of depression with occasional days of remission that began in 1985, including difficulty sleeping, loss of energy, feelings of worthlessness, and increased worrying. (Id.) Claimant reported symptoms of panic characterized by difficulty breathing, extreme emotion and physical agitation, sweats, and restlessness. (Id.) He reported a history of alcohol abuse and that he smoked marijuana for his pain and nerves. (Id.) He indicated that he occasionally took prescription pain medications that

were not prescribed to him, including Lortab. (Id.) Claimant had sought counseling once without results. (Id.) He reported that he performed most activities of daily living independently, including personal care, cleaning, and cooking. (Tr. at 258.) He stated that his hobbies included listening to music, playing the guitar, doing puzzles, and watching television. (Id.)

On mental status exam, Ms. Wilson observed a somewhat nervous affect, fair insight, and mildly deficient concentration. (Tr. at 258-59.) The exam was unremarkable and within normal limits otherwise. (Id.) Ms. Wilson assessed alcohol dependence and anxiety disorder, NOS, with feature of panic. (Tr. at 259.) She opined that his prognosis was good if able to obtain consistent and appropriate psychotropic and psychological interventions but that he was incapable of managing any benefits that may be awarded. (Id.)

Rachel Arthur, M.A., a licensed psychologist, conducted a psychological evaluation on November 10, 2010. (Tr. at 271-75.) Claimant reported a history of recurrent depression beginning as a teenager and he described his then current episode of depression as the "worst ever." (Tr. at 271.) He also reported symptoms of anxiety. (Id.) Claimant denied having ever received any counseling or past psychiatric hospitalizations. (Tr. at 272.) He reported independent daily activities. (Id.) On mental status exam, Ms. Arthur noted fair insight, moderately impaired recent memory, mildly impaired concentration, and essentially normal findings otherwise. (Tr. at 273.) She diagnosed major depressive disorder, single episode, mild; anxiety disorder NOS; alcohol dependence; and assessed a GAF of 53.[1] (Id.) Ms. Arthur noted that despite Claimant's report that his depression was the "worst ever," "he did not present as significantly depressed." (Id.) She noted that his mood was appropriate to situation and

---

[1] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

his affect was broad. (Id.) She opined that his current symptoms "just barely" met the diagnostic criteria for major depressive disorder. (Id.) Ms. Arthur also noted her belief that Claimant minimized his current use of alcohol, having reported that he never let more than five days pass without using alcohol. (Tr. at 274.)

She opined that Claimant's prognosis was fair to poor but would possibly improve with appropriate psychological and psychotropic interventions. (Id.) She recommended individual and group psychotherapy and AA and NA meetings. (Id.) She further opined that Claimant experienced mildly impaired concentration and likely would have difficulty dealing with work stressors, noting his alcohol dependence. (Tr. at 275.) Ms. Arthur indicated that Claimant's impairment was expected to last "well over a year." (Id.) On February 4, 2011, Karl G. Hursey, Ph.D., reviewed and concurred with Ms. Arthur's findings. (Tr. at 276.)

On January 19 and March 2, 2011, Claimant's providers at Carl Johnson Medical Center noted Claimant's symptoms of anxiety and prescribed Cymbalta. (Tr. at 370, 376.) On April 28, 2011, Claimant reported that he stopped taking Cymbalta after two or three months because he had experienced one panic attack and was irritable. (Tr. at 369.) On October 1, 2011, Claimant reported that he felt that he did not need to take Cymbalta and stopped taking it. (Tr. at 368.) He indicated that he was taking only Vistaril. (Id.) Claimant reported on November 28, 2011, however that his anxiety was uncontrolled and he was prescribed Celexa. (Tr. at 366.)

On November 9, 2010, Rosemary L. Smith, Psy.D., a state agency psychological expert, reviewed Claimant's record and completed a Psychiatric Review Technique and opined that Claimant anxiety disorder and alcohol dependence resulted in mild restrictions of activities of daily living and mild difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. at 85-90.) She further opined that the impairment resulted in no episodes of decompensation each of extended

11

duration. (Tr. at 90.) Dr. Smith noted that the evidence did not support any significant functional limitations resulting from Claimant's mental impairments. (Id.)

Dr. Lateef opined that Claimant's mental impairments were severe impairments. (Tr. at 89, 100.)

Analysis.

Claimant alleges that the ALJ erred in assessing his credibility. (Document No. 11 at 7-10.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2012) If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Craig v. Chater, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). In Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (*citing* Craig v. Chater, 76 F.3d at 595), the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which

that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there

>is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
>Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or]

14

redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 20.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 20.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 20-25.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 20.)

In assessing Claimant's pain and credibility, the ALJ provided an overview of Claimant's testimony and reports. (Tr. at 19-22.) He then analyzed Claimant's testimony and reports and contrasted it with the medical evidence. (Id.) Regarding Claimant's back pain, the ALJ acknowledged Claimant's allegations of significant pain exacerbated by most any movement. (Tr. at 20.) Nevertheless, the ALJ noted that the objective evidence failed to support Claimant's allegations. Specifically, the ALJ noted that Dr. Beard's exam revealed negative straight leg raise testing, no acute radiculopathy, and near full range of back motion with only mild limitation. (Tr. at 20, 262-63.) Though Claimant had some pain on straight leg raise testing, it was minimal, and when reproduced on testing by Dr. Werthammer, he recommended only conservative pain management (Tr. at 20-21, 262-63, 358-59.) Furthermore, MRI results showed moderate disc space narrowing and mild neural

15

foraminal stenosis. (Tr. at 20-21.) The ALJ further noted that Claimant did not have any radicular symptoms, his treatment was conservative in nature, and for the most part, his exam findings were rather benign. (Tr. at 21.) Claimant denied taking illegal drugs and on at least one occasion denied having used alcohol. (Id.) The ALJ also considered the opinion evidence of Dr. Werthammer, and gave his findings significant weight. (Tr. at 21-22.) He also accorded significant weight to the findings of Dr. Beard and Dr. Lateef. (Id.)

The ALJ further considered Claimant's testimony, which included the nature of the alleged pain, the exacerbating and alleviating factors of the pain, and his reported activities. (Tr. at 20.) Claimant indicated that he did the dishes, swept, raked, mowed, shopped for short periods of time, prepared simple meals, played the guitar, watched television, and played cards. (Id.)

Respecting Claimant's mental impairments, the ALJ found that Claimant had mild limitations in activities of daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation each of extended duration. (Tr. at 18.) The ALJ failed to find that Claimant's mental impairments were severe, noting that there was limited treatment for mental symptoms and did not cause more than minimal work limitation. (Tr. at 17.) Although Dr. Lateef opined that Claimant's mental impairments were severe, the ALJ declined to adopt such opinion. (Tr. at 22.) The Court finds persuasive the Commissioner's argument that Claimant's mental condition improved with medication, and therefore, because his condition was treated with medication, it was not a severe impairment. 20 C.F.R. § 416.930 (2012). The ALJ's opinion is consistent with the opinion of Dr. Smith who assessed mild limitations and no significant functional limitations. (Tr. at 85-90.)

In view of the foregoing, the undersigned finds that the ALJ conducted a thorough analysis of the relevant evidence, weighed the medical source opinions, and adequately explained his reasons for discounting the credibility of Claimant's statements regarding the intensity, persistence, and limiting

effects of his symptoms.

Claimant also argues that under the mutually supportive test recognized in Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987), that he satisfies the requirements of 42 U.S.C. § 423(d)(5)(A), because the evidence of record, including his testimony and statements, is supported by substantial evidence. (Document No. 11 at 6-7.) Claimant has misinterpreted the holding in Coffman. In that case, the issue was not one of credibility but whether the ALJ applied the appropriate standard in weighing the treating physician's opinion that the claimant was disabled from gainful employment. Coffman, 829 F.2d at 517-18. The Fourth Circuit concluded that the ALJ had misstated the legal principles and standards and improperly discounted the physician's opinion due to a lack of corroborating evidence. Id. at 518. The Court held that the correct standard required a treating physician's opinion to be "ignored *only* if there is persuasive contradictory evidence." Id. There, the physician provided medical reports with his opinion letter. Id. The record also included findings of two other physicians and the testimony of the claimant. Id. In view of the of the supporting evidence, the Fourth Circuit noted that [b]ecause Coffman's complaints and his attending physician's findings were mutually supportive, they would satisfy even the more exacting standards of the Social Security Disability Benefits Reform act of 1984, 42 U.S.C. § 423(d)(5)(A)." Id. Accordingly, the undersigned finds contrary to Claimant's argument that Coffman fails to offer any "mutually supportive" test applicable to assessing a claimant's credibility. For the reasons set forth herein, the undersigned finds Coffman inapposite and Claimant's argument without merit.

Claimant also argues that the ALJ's use of boilerplate credibility language warrants remand "because such language provides no basis to determine what weight the [ALJ] gave the Plaintiff's testimony." (Document No. 11 at 8.) Pursuant to SSR 96-7p, the ALJ "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996

17

WL 374186, at *4. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." Id. The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

In this case, it is clear that the ALJ used boilerplate language regarding the two-step credibility analysis. (Tr. at 19-20.) However, the ALJ went on to explain the specific reasons for his credibility determination and specifically cited the medical evidence, Claimant's testimony and reports, Claimant's activities, and the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Accordingly, pursuant to SSR 96-7p, the Court finds that the ALJ's credibility finding sufficiently was articulated and explained with references to the specific evidence that formed his decision. Thus, the Court finds that the ALJ's credibility decision is supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

. The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2014.

R. Clarke VanDervort
United States Magistrate Judge